IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



)
JO ANN ABELL,                      )
                                   )
     Plaintiff,                    )
                                   )
v.                                 )        Civil Action No. 1:10-cv-826
                                   )
AMERICAN BIRD CONSERVANCY,         )
                                   )
     Defendant.                    )
                                   )

## MEMORANDUM OPINION

This matter comes before the Court on the Motion for
Summary Judgment of Defendant American Bird Conservancy ("ABC").
Plaintiff Jo Ann Abell is a resident of Middletown, Maryland who
used to work for ABC, a non-profit corporation located in The
Plains, Virginia.  Plaintiff's Amended Complaint alleges that
Defendant violated the Age Discrimination in Employment Act of
1967 ("ADEA"), 29 U.S.C.A. §§ 621-634 (West 2008), when it
terminated her employment and hired a worker under the age of 40
in her place.  ABC is an employer within the definition and
coverage of 29 U.S.C.A. § 630(b).

Plaintiff applied for employment in February 2004.  ABC
hired Plaintiff on March 1, 2004 as a Development Assistant at a
salary of $36,000 per year.  Plaintiff's supervisor during her
employment at ABC, and the person who ultimately selected and

hired Plaintiff, was Vice President of Development Rita Fenwick,
married to ABC's President George Fenwick.  At the time,
Plaintiff was 58 years old, Ms. Fenwick was 43, and Mr. Fenwick
was 53.  Between 2004 and 2008, Plaintiff received positive
annual performance reviews, five raises, and a promotion to
Development Officer in 2007.

In early 2007, Ms. Fenwick agreed that Plaintiff could work
from home one day per week because of Plaintiff's three hour
round trip commute from Maryland.  In December 2007, Ms. Fenwick
agreed to let Plaintiff work from home two days per week because
of her commute.  In April 2008, Ms. Fenwick agreed to
Plaintiff's request to reduce her work week to four days per
week and to work from home three out of four days per week.
Plaintiff coordinated her one day in the office with the weekly
staff meeting and also met with Ms. Fenwick on her day in the
office to develop a work plan for the following week.  From the
beginning, the remote work arrangement posed certain obstacles
to Plaintiff and Ms. Fenwick, who had to set aside time each
week to update Plaintiff on what had transpired while she was
out of the office.  While Plaintiff received a portable computer
to use at home, Plaintiff could not access ABC's electronic or
hard copy files from outside the ABC office.

In January 2009, Plaintiff received a positive performance
review.  In May 2009, Plaintiff had a medical procedure

requiring a four day hospital stay.  During Plaintiff's time in hospital, Ms. Fenwick held a strategy meeting for the Hawaii program, on which Plaintiff was the lead development staff person.  Plaintiff did not come into the ABC office for a period of roughly two months surrounding the medical procedure.  On May 20, 2009, Plaintiff emailed Ms. Fenwick asking to be kept in the communication chain.  When Plaintiff returned to work, she realized that she had not received any emails from Ms. Fenwick during her absence.

In June 2009, Ms. Fenwick announced at a development staff meeting that she was building a new development team for 2010. Ms. Fenwick also announced that she had hired Jack Morrison as Planned Giving Officer.  On June 25, 2009, Plaintiff emailed Ms. Fenwick about taking an extra day off the next week because her regularly scheduled day off fell on the Independence Day holiday.  Ms. Fenwick forwarded the email to Mr. Fenwick.  He responded "We value JoAnn [sic], but this arrangement isn't working.  She seems to be on a sort of permanent disability in which she is free to never come in to work and to tell you what she will and will not do—but if she cannot do what you need, then we need to get someone who can."

On August 14, 2009, ABC hired Erin Allen as a new Development Officer.  Until that time, Plaintiff had been ABC's sole Development Officer.  In August 2009, Ms. Fenwick hired

Tami O'Brien as Assistant Director of Development with a delayed start date of January 2010.

In September 2009, Plaintiff informed Ms. Fenwick that she and her husband had begun construction on a new home in Lexington, Virginia, approximately a three hour drive from ABC, and she inquired about continuing the telecommuting arrangement after they moved.  Ms. Fenwick responded that she did not think that the telecommuting arrangement would continue to work when Plaintiff lived in Lexington.  She also allegedly reminded Plaintiff that Plaintiff would be eligible for Social Security and Medicaid [sic] in April 2010 and told Plaintiff that she should probably think about retiring.  Plaintiff responded that it would be quite a while before she moved and asked to continue working even after she moved.

Plaintiff alleges that Ms. Fenwick began making Plaintiff's work situation increasingly difficult after the conversation about continuing the telecommuting arrangement, because Plaintiff subsequently did not receive several emails or receive information about meetings relevant to projects that she managed.

On October 28, 2009, Plaintiff emailed Ms. Fenwick asking if she could use up her leave time by taking two weeks off before the end of the year.  Ms. Fenwick responded, conditionally granting the time off and asking "Have you set a

4

date for your retirement?  I have put off thinking about it because it makes me sad."  In her response, Plaintiff said "Progress on building our house has been slowed down . . . . Because I had planned my retirement to coincide with moving down there, I now anticipate working all next year."  Ms. Fenwick immediately replied:

> Jo Ann, this is a problem.  You told me that you were going to retire this April.  I told you during your evaluation this January, that it really wasn't working having a part-time Development Officer working offsite. You told me that you understood and that you had originally planned to retire this year, but financial and health matters made it so you really needed to work until Medicare could kick in next April.  We revised your workload to accommodate your health situation, and the limitations on the kinds of work you can perform out-of-the-office with the clear understanding that you would retire in April.
>
> I need you to honor that agreement.  If I could have you here working full-time, it would be different, but we are terrifically under-manned     as     it     stands.

Plaintiff responded "Well, I guess April it is."

    In January 2010, Plaintiff received her 2009 performance evaluation, which contained commentary about her work that Plaintiff perceived as negative.  Until the receipt of her performance evaluation, Plaintiff claims that she was unaware that Ms. Fenwick was dissatisfied with her work.

On January 28, 2010, Plaintiff sent an email to Mr. Fenwick, Chief Conservation Officer David Younkman, and Vice President of Operations Merrie Morrison, outlining an allegedly hostile work environment created by Ms. Fenwick.  In the email, she asked if Mr. Younkman would sit in on her review meeting. Ms. Morrison responded that she was the proper person to sit in on the review meeting.  On February 1, 2010, Plaintiff's review meeting was conducted with Plaintiff, Ms. Fenwick, and Ms. Morrison.

At the meeting, Plaintiff persisted that she did not want to retire, and Ms. Fenwick told her that she had a bad attitude and needed to be terminated that day.

Plaintiff received a letter of termination dated February 3, 2010, citing Plaintiff's performance, attitude, and unwillingness to improve in those areas as the reasons for the termination.

Pursuant to Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment when the evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Nat'l City Bank of Ind. v. Turnbaugh, 463 F.3d 325, 329 (4th Cir. 2006).  While the evidence is viewed in the light most favorable to the nonmoving party, the nonmoving party must rely on more than conclusory allegations or mere speculation.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
Summary judgment is appropriate when the plaintiff cannot
prevail on her discrimination claims as a matter of law.  Evans
v. Techs. Applications & Serv. Co., 80 F.3d 954, 958-59 (4th
Cir. 1996).

     To prevail on a claim alleging disparate treatment under
the ADEA, Plaintiff must prove by a preponderance of the
evidence that age was the "but-for" cause of the adverse
employment actions.  Bodkin v. Town of Strasburg, 386 F. App'x
411, 413 (4th Cir. 2010).  Plaintiff has not shown evidence of
direct age discrimination, so she must prove her ADEA claim
under the burden shifting framework established in McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  See Reeves
v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)
(recognizing that the McDonnell Douglas framework applies to
ADEA claims).

     To make out a prima facie case of age discrimination,
Plaintiff must show that (1) she is a member of a protected
class (40 years or older); (2) she suffered an adverse
employment action; (3) she was performing her job duties at a
level that met ABC's legitimate expectations at the time of the
adverse action; and (4) her position remained open or was filled
by a similarly qualified individual outside the protected class.
Hill v. Lockheed Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th

Cir. 2004) (en banc).  If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the employment action.  Reeves, 530 U.S. 133, 142 (2000).  Then if Defendant articulates a legitimate and nondiscriminatory reason for the action, the burden shifts back to Plaintiff to prove that the legitimate reason(s) offered by Defendant were not the true reasons, but actually pretext for discrimination.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In the instant action, Plaintiff has established that she is a member of a protected class because she was over the age of 40 at the time of the adverse action, she suffered an adverse employment action when she was terminated, and her position was filled by an individual who was younger than Plaintiff.[1] However, Plaintiff has failed to show that she was performing her job duties at a level that met ABC's legitimate expectations at the time that she was terminated.  Plaintiff's satisfactory performance on the work that ABC delegated to her does not suffice to show that her overall performance met ABC's legitimate expectations.

---

[1] While certain development team employees whom ABC hired in the year before Plaintiff's termination were not in Plaintiff's protected class, all of the new employees worked full time and on site in the ABC offices, as Plaintiff was unable or unwilling to do.

Plaintiff argues that the evidence shows that she met ABC's legitimate expectations because she received positive performance evaluations and emails praising her work. Nevertheless, it is the perception of the decision maker that is relevant to whether the employee met the employer's legitimate expectations at the time of termination. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 518 (4th Cir. 2006). ABC was frustrated with Plaintiff's part-time remote work arrangement because it made it difficult for Plaintiff's supervisor to assign and manage Plaintiff's work and because Plaintiff could not perform certain types of work or fully develop relationships with coworkers because she was out of the office four days per week.

Ms. Fenwick first expressed concern about the part-time remote work arrangement in Plaintiff's 2008 performance evaluation.  In the evaluation, Ms. Fenwick noted that Plaintiff "is not available to help with important projects that arise in the office such as responding to donor calls, contact or correspondence, assisting with mailings, or creating the new central files which means others on the development team must use some of their time to accomplish these tasks."  Also in the evaluation, Ms. Fenwick noted that "Jo Ann largely keeps to herself and would benefit—and provide benefits—through greater communication with other ABC staff."  The email correspondence between Mr. Fenwick and Ms. Fenwick in June 2009 also evidences

9

the sentiment among management that the part-time remote work

arrangement was not working well, and Plaintiff received an

email in October 2008 in which Ms. Fenwick explicitly told her

that if Plaintiff could work in the office full time, the

situation "would be different."  In Plaintiff's 2009 performance

evaluation, Ms. Fenwick reiterated the impact that Plaintiff's

part-time remote work arrangement had on both the development

team and Plaintiff's ability to perform her duties:

> Early in 2009 Jo Ann requested to work three
> days a week at home, rather than one.   I
> reluctantly agreed to experiment with this
> new situation, because I personally value Jo
> Ann's help, I trust her work ethic, and she
> had indicated it would only be for a year as
> she was planning to retire anyway.  It was
> not the best decision for ABC, but I felt
> loyalty to Jo Ann who had been with ABC for
> five years, believed in ABC's mission, and
> was    a    hard-worker.         Unfortunately,
> development work is always a team effort,
> and it is extremely difficult to be off-site
> and  be  an  effective  fundraiser  for  any
> organization.     To  succeed,  the  offsite
> fundraiser must  make  a  special  effort  to
> stay in contact with their colleagues and to
> track programs and projects.  Jo Ann did not
> do this, and it showed in her draft report
> which  had  old  information,  and  in  her
> general      disconnectedness      with      the
> organization.    Even on the one day a week
> she was in, she did not make an effort to
> meet with or check in with program managers

Contrary to Plaintiff's assertions that her work met ABC's

expectations, the emails and performance evaluations indicate

that ABC had difficulty with Plaintiff's work because of the

part-time remote work arrangement as of 2008 and continuing
through Plaintiff's termination in February 2010.

Assuming arguendo that Plaintiff could establish a prima
facie case of age discrimination, she has not presented any
evidence to show that ABC's reason for her termination is a
pretext for age discrimination.  To show that the proffered
reason is a pretext for discrimination, Plaintiff must do more
than raise minor discrepancies that do not create a genuine
dispute of fact.  Hux v. City of Newport News, 451 F.3d 311, 315
(4th Cir. 2006).  The Plaintiff's own assertion that the
employer's proffered reason for the adverse action is pretextual
carries no weight.  Holland v. Washington Homes, Inc., 487 F.3d
208, 215 (4th Cir. 2007).  In Reeves, the Supreme Court held
that judgment as a matter of law may well be appropriate if a
"plaintiff created only a weak issue of fact as to whether the
employer's reason was untrue and there was abundant and
uncontroverted independent evidence that no discrimination had
occurred."  530 U.S. at 148.

ABC has cited two reasons for Plaintiff's termination,
including Plaintiff's part-time remote work arrangement and
Plaintiff's negative attitude.  While Plaintiff argues that she
was unaware of any concerns in those areas until the final
meeting at which she was terminated, the emails and performance
evaluations establish that Plaintiff had received notice of both

11

issues in the months prior to her termination.  The fact that
Ms. Fenwick hired Plaintiff at the age of 58, promoted her in
2007, and then was the same individual who chose to fire
Plaintiff also weighs against a finding of discriminatory
animus.  See Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991)
("[I]n cases where the hirer and firer are the same individual
and the termination of employment occurs within a relatively
short time span following the hiring, a strong inference exists
that discrimination was not a determining factor for the adverse
action taken by the employer."); see also Tyndall v. Nat'l Educ.
Ctrs., Inc. of Cal., 31 F.3d 209, 211 (4th Cir. 1994) (finding
that Plaintiff failed to overcome the inference of
nondiscrimination when it was the same individual who hired the
plaintiff and fired her two years later).

     Plaintiff also argues that her employer's inquiries into
her retirement plans evidence an anti-age bias, but the Fourth
Circuit has consistently held that an employer's inquiries about
an employee's retirement plans do not constitute evidence of an
ADEA violation.  See, e.g., Burns v. AAF-McQuay, Inc., 166 F.3d
292, 295 (4th Cir. 1999) (concluding that "the scant number and
generally mild nature of the incidents in this case combine to
make the evidence insufficient" in plaintiff's hostile
environment claim brought under the ADEA, when employer inquired
about plaintiff's plans for retirement and referred to plaintiff

acting like a child); see also Papa v. Union Carbide Corp., 971
F. Supp. 220, 227-28 (S.D. W.Va. 1997) (finding that plaintiff
had not assembled enough evidence to survive summary judgment
under McDonnell Douglas when plaintiff failed to support his
assertion that his employer's suggestion that he retire was
motivated by an intent to discriminate on the basis of age).
Rather than evidencing age bias, Ms. Fenwick explained that her
inquiry into Plaintiff's retirement was based on the need to
determine ABC's budget in her October 2009 email to Plaintiff.

     In the Amended Complaint, Plaintiff also alleges that she
was subjected to a hostile work environment at ABC.[2]  To make out
a claim for hostile work environment under the ADEA, Plaintiff
must show that (1) she is at least 40 years old; (2) she was
harassed based on her age; (3) the harassment unreasonably
interfered with her work, creating an objectively and
subjectively hostile environment; and (4) there is some basis
for imputing liability to the employer.  Burns, 166 F.3d at 294.
Isolated incidents of hostile or abusive language are
insufficient to support a hostile work environment claim.
Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

     Plaintiff has not identified any instances of harassment
based upon her age.  As discussed above, inquiries regarding an

---

[2] Plaintiff does not explicitly set out a hostile work
environment claim as a separate count.

individual's retirement plans do not evidence discriminatory animus.   Furthermore, any inquiries into Plaintiff's retirement were infrequent and not sufficiently severe or pervasive to support a hostile work environment claim.   Consequently, Plaintiff has failed to allege a prima facie hostile work environment claim.

    For the foregoing reasons, Defendant is entitled to summary judgment.

    An appropriate Order shall issue.

                                        _____/s/_____
                                        Claude M. Hilton
                                        United States District Judge

Alexandria, Virginia
September 1, 2011